# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:11-cr-354-(24)-LJO |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2)** |
| v. | |
| **ARMAND VALLE,** | |
| Defendant. | (ECF No. 747) |

## I. INTRODUCTION

Before the Court is Defendant Armand Valle's ("Defendant" or "Valle") motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) ("§ 3582"), ECF No. 747, in accordance with United States Sentencing Guidelines ("USSG") § 1B1.10(b)(1) and Amendment 782 to the USSG. Amendment 782 revised the Drug Quantity Table in USSG § 2D1.1 and reduced by two levels the offense level applicable to many drug trafficking offenses. *See* USSG, sup. App'x C, amend. 782 (2014) ("Amendment 782"). The Government has opposed the motion on the basis that, although Defendant is eligible for a reduction under § 3582, his motion should be denied because of the seriousness of his offense and because he already received a number of breaks in his plea agreement. *See* ECF No. 757. Upon a thorough review of the parties' briefing, the record in the case, including the Probation Office's Presentence Report ("PSR"), and the relevant law, the Court DENIES Defendant's motion

## II. BACKGROUND

On July 3, 2013, the parties filed a plea agreement with the Court in which Defendant pleaded

1

guilty to one count of conspiracy to distribute and possess with intent to distribute cocaine and methamphetamine. ECF No. 211. The agreement was pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(C)[1] and provided that the Government would recommend a sentence of 188 months. *Id.* at 6.

According to the PSR, Defendant's base offense level was 34 (based on the 4.5 kilograms of methamphetamine involved in the offense to which he pleaded guilty), and his criminal history category was V (based on 12 criminal history points). ECF No. 351 (PSR) at 14, 22. The PSR recommended a two-level enhancement in the offense level for Defendant's role as a leader of the Watsonville-based regiment of Nuestra Familia. *Id.* at 14. The PSR also recommended a three-level reduction in the offense level for acceptance of responsibility. *Id*. at 15. The PSR, which cited the 2012 Guidelines manual, found that the Guidelines range for a defendant with an offense level of 33 and a criminal history category V was 210 to 262 months' imprisonment, and the PSR recommended a 210-month sentence. *Id*. at 31. On September 30, 2013, the Court accepted the parties' plea agreement pursuant to Rule 11(c)(1)(C) and sentenced the defendant to a term of 188 months' imprisonment, a 60-month term of supervised release, and a $100 penalty assessment. ECF Nos. 368, 423.

On September 7, 2017, Defendant filed a motion for a reduction in sentence pursuant to § 3582, requesting that the Court reduce his offense level by two points in accordance with Amendment 782 and reduce his sentence by 20 months. ECF No. 747. Even though Defendant received a below-Guidelines sentence pursuant to the Rule 11(c)(1)(C) agreement, that sentence referenced the then-applicable Guidelines range, and now that the Guidelines range has subsequently been reduced, Defendant argues that he should get a sentence at the low end of the new Guidelines range. Now that the applicable

---

[1] That Rule provides that a plea agreement may specify that an attorney for the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)." Fed. R. Crim. P. 11(c)(1)(C). If the Court rejects a Rule 11(c)(1)(C) plea agreement, the defendant is given an opportunity to withdraw the plea. Fed. R. Crim. P. 11(c)(5)(B).

Guidelines range has been reduced from a range of 210 to 262 months to a range of 168 to 210 months, Defendant urges that his sentence be reduced to 168 months' imprisonment. The Government opposed, arguing that the Rule 11(c)(1)(C) plea agreement resulted in a serious break in the sentence received. ECF No. 757. Defendant replied. ECF No. 761. The matter is ripe for review.

### III. LEGAL STANDARD

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting § 3582(c)). However, a federal sentencing court is authorized to modify an imposed sentence when the relevant sentencing range was lowered subsequent to a defendant's original sentence. § 3582(c)(2); *see United States v. Dunn*, 728 F.3d 1151, 1155 (9th Cir. 2013) (a district court may modify an imposed sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." (quoting § 3582(c)(2))). Effective November 1, 2014, the Commission promulgated Amendment 782, which generally revised the Drug Quantity Table and chemical quantity tables across drug and chemical types. *See* Amendment 782. The Commission also voted to make the Amendment retroactively applicable to previously sentenced defendants. *See* USSG, sup. App'x C, amend. 788 (2014); *United States v. Navarro*, 800 F.3d 1104, 1107 (9th Cir. 2015).

Determining whether a sentence reduction is appropriate under § 3582(c)(2) "requires a two-step inquiry." *Dunn*, 728 F.3d at 1155. At step one, "a district court must determine whether a prisoner is eligible for a sentence modification under the Commission's policy statement in USSG § 1B1.10." *Id.* That policy statement enumerates a list of amendments to the which have lowered the sentencing ranges for certain offenses. *See* USSG § 1B1.10(d). In the event that one of the enumerated amendments has lowered a guideline range applicable to a defendant, the district court "shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." USSG § 1B1.10(b)(1).

If the answer to step one is that the defendant is eligible for a reduced sentence, the district court

turns to step two of the inquiry, where the court "must consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Dunn*, 728 F.3d at 1155 (internal quotation marks and citation omitted). The § 3553(a) factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *Id.* at 1158 (internal quotation marks and citation omitted).

In *United States v. Austin*, the Ninth Circuit had held that a defendant sentenced under plea agreement was eligible for a sentencing reduction under § 3582 only when the agreement *expressly used* a Guidelines sentencing range to establish the term of imprisonment or when it was evident from the agreement itself that a Guidelines sentencing range was used. 676 F.3d 924, 930 (9th Cir. 2012) (holding that where a Rule 11(c)(1)(C) agreement did not rely on a Guidelines sentencing range, the sentence was based on the 11(c)(1)(C) plea agreement itself and not on a Guidelines range, leaving a district court without jurisdiction to modify a sentence under § 3582). In *United States v. Davis*, the Ninth Circuit overruled *United States v. Austin* and held that "[e]ven when a defendant enters into an 11(c)(1)(C) agreement, the judge's decision to accept the plea and impose the recommended sentences is likely to be based on the Guidelines; and when it is, the defendant should be eligible to seek § 3582(c)(2) relief." 825 F.3d 1014, 1026 (9th Cir. 2016) (en banc) (quoting *Freeman v. United States*, 564 U.S. 522, 534 (2011) (plurality opinion)). The Ninth Circuit emphasized in *Davis* that the opinion merely eliminated the jurisdictional barrier to eligibility erected in *Austin* and did not mandate that an eligible defendant who had entered into an 11(c)(1)(C) agreement be awarded relief pursuant to a § 3582 motion: "On remand, '[i]f the district court, based on its experience and informed judgment, concludes the [Rule 11(c)(1)(C) ] agreement led to a more lenient sentence than would otherwise have been

imposed, it can deny the motion, for the statute permits but does not require the court to reduce a sentence.'" *Id.* at 1028 n.14 (quoting *Freeman*, 564 U.S. at 532).

## IV. <u>DISCUSSION</u>

The initial inquiry is whether Defendant is eligible for a sentence reduction. Both Defendant and the Government agree that he is eligible. ECF Nos. 747, 757. Amendment 782 to the Sentencing Guidelines revised the Drug Quantity Table in § 2D1.1 and reduced by two levels the offense level applicable to Defendant's drug trafficking conviction. Under Amendment 788, Amendment 782 applies retroactively to Defendant's sentence. Although Defendant was sentenced pursuant to an 11(c)(1)(C) agreement, the plea agreement "was clearly rooted in the Guidelines." *Davis*, 825 F.3d at 1027. The agreement stated that the amount of methamphetamine involved in the crime to which he was pleading guilty was between 2.27 kilograms and 4.5 kilograms, resulting in an applicable base offense level of 34, and that he agreed that a two-level leadership enhancement applied pursuant to USSG § 3B1.1(c). ECF No. 211 at 4. Similar circumstances led the *Davis* court to find that the plea agreement was based on the Guidelines. *Davis*, 825 F.3d at 1027 (finding that the plea agreement was rooted in the Guidelines because it required the sentencing judge to calculate the Guidelines sentence, stated that the amount of drugs would yield a base offense level of 34, and stated that the Defendant qualified for a specific enhancement and an adjustment under the Guidelines). The PSR discussed the Guidelines range and the plea agreement's recommendation of 188 months' imprisonment, and the Court stated during the sentencing hearing that it found the offense level to be 33, with a criminal history category of V, resulting in a Guidelines range of 210 to 262 months but that under the 3553(a) factors, it would impose a sentence of 188 months, consistent with the Rule 11(c)(1)(C) agreement. This too qualifies under *Davis* as a sentence based on the Guidelines. *Id.* at 1027-28 (holding that the sentence was "based on the Guidelines" where the sentencing judge calculated the Guidelines range and referring to it during sentencing). Therefore, pursuant to the Ninth Circuit's decision in *Davis*, Defendant is eligible for a reduction under § 3582(c)(2). *Id.* at 1026; *cf. United States v. Villasenor*, 734 F. App'x 487, 488 (9th

Cir. 2018) (holding that a defendant's sentence was not based on the Guidelines where the "plea agreement did not set forth a base offense level under the Guidelines or discuss applicable enhancements or reductions" and the sentencing court made clear that the sentence was imposed pursuant to the parties' agreement regardless of any Guidelines range it calculated). Accordingly, Defendant is now eligible to have his offense level re-calculated from 33 to 31. With an offense level of 31, criminal history category V, the Guidelines range applicable to Defendant is 168 to 210 months, rather than the original range of 210 to 262 months.

The second step of the inquiry requires the Court to consider, in its discretion, whether a reduction under § 3582 is appropriate given the facts of this case. Defendant argues that the Court should exercise its discretion to grant the reduction because Defendant has no disciplinary violations in the six years he has been in custody and because even with a reduced sentence of 168 months, he would still serve 14 years for his participation in the drug conspiracy, which is a substantial sentence.

The Government argues that the Court should not grant the motion because of Defendant's significant criminal history and the substantial concessions that the Government gave Defendant in order to reach an agreement on the 188-month sentence. The Government points to three major "breaks" that it gave Defendant in order to reach agreement on the 188-month sentence. First, the Government agreed not to oppose a two-level leadership enhancement and thereby allowed Defendant to avoid the four-level enhancement that was available under USSG § 3B1.1(a), for "cases involv[ing] defendants who, the evidence showed, exercised some degree of control or organizational authority over others."[2] *United*

---

[2] This section provides for varying levels of enhancement based on the defendant's level of control over the criminal activity and the number of participants:

    (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

    (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

    (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than

6

*States v. Garcia*, 497 F.3d 964, 969-70 (9th Cir. 2007) (quoting *United States v. Avila*, 95 F.3d 887, 890 (9th Cir. 1996)). The Government argues that Defendant was eligible for the four-level enhancement because he admitted in the plea agreement to being "a leader of the Watsonville-based regiment of Nuestra Familia" who was "in charge of other regiment members, and was responsible for the delivery and sale of methamphetamine," in addition to "collect[ing] or direct[ing] the collection of regiment dues." Plea Agreement at 7. The extra two points would have pushed the adjusted offense level up to 35, resulting in a Guidelines range of 262 to 327 months.

Second, the Government argues that it made a number of concessions concerning other drug transactions. The plea agreement admits that in May and June of 2010, Defendant "engaged in conversations with at least one codefendant regarding the Nuestra Familia obtaining a large shipment of methamphetamine to distribute among the various Nuestra Familia regiments." Plea Agreement at 7. This is in addition to Defendant's conversation in June of 2010 with a codefendant in which he offered to provide between 2.27 and 4.50 kilograms of methamphetamine while the organization was awaiting a larger shipment of methamphetamine from another source. *Id*. The Government's opposition outlines the content of other intercepted calls that it did not include in the plea agreement. First, it did not include the two pounds of methamphetamine that Defendant provided to a codefendant in May of 2010. Nor does it include the fact that he had supplied the money for the larger shipment (a 20-pound purchase) referenced in his plea agreement, a fact that would have been included in the calculation of the amount of drugs at issue and raised the base offense level to 38. In addition, Defendant did in fact arrange for and provide methamphetamine to a codefendant, which is also absent from the factual admissions in the plea agreement. The opposition includes an exhibit with over 300 pages of transcripts of intercepted calls between February and June of 2010 that demonstrate Defendant's efforts to oversee

---

described in (a) or (b), increase by 2 levels.

USSG § 3B1.1.

the activities of gang members, including efforts to obtain and sell drugs, to pay dues to Nuestra Familia, and to establish new regiments of Nuestra Familia in the East Bay. ECF No. 757-3. Finally, the Government argues that it had a colorable claim that the methamphetamine at issue was pure enough to qualify as "ice" methamphetamine, which would also have raised the base offense level to 38. At a base offense level of 38, plus a four-level leadership enhancement, less a three-level reduction for acceptance of responsibility, the resulting adjusted offense level would be 39. At a criminal history category of V, Defendant would have been facing a guideline range of 360 months to life.

Finally, the Government argues that Defendant received yet another benefit in the treatment of a supervised release petition, *United States v. Valle*, 1:13-cr-00337-LJO. He was under a term of three years of supervised release at the time that he committed the conspiracy offense for which he was charged in the instant case and admitted during the sentencing hearing for this case to the violations of his term of supervised release. The statutory maximum for that offense was 24 months. The USSG provide:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.

USSG §7B1.3(f). Nevertheless, the Government did not object to the Court's sentencing Defendant to a term of 24 months of imprisonment for the violation to run concurrently with the conspiracy sentence. *See* Transcript of Sept. 30, 2013 Hearing; ECF No. 5, 1:13-cr-00337-LJO. This would have added another 24 months to the potential sentence, which, on top of the 360 months that would have been available, would have amounted to a potential 384 months under the Guidelines.

In reply, Defendant counters that the concessions the Government discusses in its opposition were all already known to the Government at the time it struck the plea deal agreeing to recommend a below-Guidelines sentence, and the opposition lacks context about why the Government made the concessions and what concessions Defendant might have made. ECF No. 761 at 1-2. He further argues

8

none of these "breaks" were on the record and that rehashing the concessions made during plea negotiations impermissibly injects the Court into the plea discussions. Finally, he argues that if the Government did not want Defendant to be eligible for resentencing in the event that the Guidelines shifted, it was free during the plea process to negotiate a waiver of Defendant's right to bring a § 3582 motion yet failed to do so.

Having reviewed and considered Defendant's crime, the original PSR, the § 3553(a) factors, public safety considerations, and Defendant's post-sentencing conduct, the Court declines to exercise its discretion to reduce Defendant's sentence. It is clear that Defendant received substantial breaks during the plea process that resulted in a much shorter sentence than he otherwise would have faced. It is not clear that the uncharged conduct outside the record and plea agreement is appropriately considered in a § 3582 motion. *See United States v. Fox*, 631 F.3d 1128, 1132 (9th Cir. 2011) ("Indeed, [the USSG policy statement on retroactive amendments] makes clear that the only 'appropriate use' of sentence modification proceedings under section 3582(c) is to adjust a sentence in light of a Guidelines amendment, and that section 3582(c) cannot appropriately be used as a 'full resentencing' that reconsiders a sentence based on factors unrelated to a retroactive Guidelines amendment." (quoting USSG § 1B1.10(a)(3))); *see also Dillon*, 560 U.S. at 826 ("Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding."). Accordingly, the Court does not consider this uncharged conduct. But the Court's conclusion based on the record before it at the time of sentencing is that Defendant got a major break. The agreement led to a below-Guidelines sentence for the single conspiracy offense – Defendant received 188 months when the low-end Guidelines range called for 210 months. The availability of the full four-level leadership enhancement would have pushed the Guidelines range even higher, and if the 24 months for the supervised-release violation had run consecutively rather than concurrently, two more years would have been tacked on to the sentence. The Court concludes, based on its experience and judgment, that Defendant received a more lenient sentence

than would otherwise have been imposed in the absence of the Rule 11(c)(1)(C) agreement, receiving a below-Guidelines sentence that is now squarely within the amended Guidelines range following Amendment 782. Under the circumstances, this is not a compelling candidate for a sentence reduction. *Davis*, 825 F.3d at 1028 n.14 (holding that where a district court concludes that the Rule 11(c)(1)(C) agreement "led to a more lenient sentence than would otherwise have been imposed, it can deny the motion" (quoting *Freeman*, 564 U.S. at 532)).

The commentary to the Guidelines permits a court to consider post-sentencing conduct when entertaining a § 3582 motion, and the Court has given substantial weight to this factor when considering motions by codefendants in this case. *See, e.g., United States v. Salazar*, No. 1:11-CR-00354 LJO, 2016 WL 8735650, at *3 (E.D. Cal. Dec. 23, 2016) (granting sentence reduction and stating that "the most important factors are Defendant's . . . positive steps he has taken towards rehabilitation while he has been in custody"); *United States v. Gutierrez*, No. 1:11-CR-00354 LJO, 2016 WL 7404688, at *4 (E.D. Cal. Dec. 21, 2016) ("the Court takes into account the positive steps Defendant has taken and his clean disciplinary record since he has been in custody," including his "completion of several BOP courses"). Unlike those codefendants, however, Defendant has provided no letters or other materials from his time in prison documenting his good behavior, coursework, or other efforts at rehabilitation that provided the Court the foundation to grant sentence reductions to other codefendants. Defendant asserts that he has no disciplinary violations in the six years that he has been incarcerated. This is commendable but is not enough on its own to tip the scales in favor of granting a reduction where Defendant's very serious criminal conduct as a leader of a gang, while on supervised release, otherwise counsels against granting the motion.

In light of the substantial benefit Defendant received pursuant to his Rule 11(c)(1)(C) agreement even before Amendment 782 was enacted, the seriousness of his crimes, and the lack of supporting material about Defendant's post-conviction conduct, the Court declines to exercise its discretion to grant a 20-month reduction in Defendant's sentence. Considering the applicable § 3553(a) factors, the Court

determines that, in its discretion, the sentence reduction authorized is not "warranted in whole or in part under the particular circumstances of the case." *Dunn*, 728 F.3d at 1155 (internal quotation marks and citation omitted).

## V. CONCLUSION AND ORDER

Defendant's motion pursuant to § 3582 is **DENIED**.

IT IS SO ORDERED.

Dated: **September 14, 2018**        /s/ Lawrence J. O'Neill
                                 UNITED STATES CHIEF DISTRICT JUDGE